J-A11003-24

2024 PA Super 160

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                         :             PENNSYLVANIA
                                           :
                v.                   :
                                           :
                                           :
NICKERS BEAUCHAMPS           :
                                           :
               Appellant          :    No. 1216 MDA 2023

Appeal from the Judgment of Sentence Entered March 15, 2023
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000448-2022

BEFORE: BOWES, J., STABILE, J., and MURRAY, J.

OPINION BY BOWES, J.:                                  **FILED: JULY 30, 2024**

Nickers Beauchamps appeals from the judgment of sentence of sixteen to thirty-six months of incarceration imposed following his two convictions for failing to comply with his Sexual Offender Registration and Notification Act ("SORNA") obligations.[1] We affirm.

Appellant was required to register due to his conviction for child pornography charges, for which he was arrested on June 18, 2018. He entered a plea on July 18, 2018, and was sentenced on August 29, 2018, to a period of nine months of incarceration in the county jail, followed by five years of restrictive intermediate punishment. Appellant initially registered as

---

[1] 42 Pa.C.S. §§ 9799.10 – 9799.42.

a sexual offender in Pennsylvania on March 15, 2019.[2]  **See** Trial Court Opinion, 10/6/23, at 2 ("[Appellant] completed his initial [registration] . . . on March 15, 2019, and . . . is required to register every [twelve] months until March 15, 2034.").  Appellant signed paperwork acknowledging his SORNA obligations.

Appellant was ordered to return to Pennsylvania from Florida for violations of his intermediate punishment program sometime in October of 2020, which resulted in his incarceration through December 28, 2021.[3]  Thereafter, Appellant, according to his testimony, "stay[ed] with [his] friend for about a week" before he had enough money "to go back down to Florida."  N.T. Trial, 12/1/22, at 72.  Pennsylvania State Police ("PSP") trooper Erica Polcha testified that she received a request to investigate Appellant for noncompliance on February 2, 2022.  She learned through her investigation that Appellant had initially registered a Florida address with that jurisdiction's equivalent of the PSP no later than February 28, 2020.  She identified October 27, 2020, as Appellant's last update with the PSP.[4]  **See** N.T. Trial, 12/1/22, at 51.  Trooper Polcha determined that Appellant last updated his address with

---

[2] As this date is exactly nine months from June 15, 2018, it appears that Appellant was paroled on this date and registered at that time.

[3] Appellant was apparently released upon parole to Immigrations and Customs Enforcement ("ICE") officials, who placed Appellant into a home plan in Charlotte County, Florida.  The trial court opinion cites Appellant's testimony on this point.

[4] Presumably, that update was made in conjunction with his revocation.

Florida authorities on or about February 28, 2022, and she testified that Appellant never informed the PSP that he had moved to Florida or otherwise satisfied his annual registration obligations. *Id*. at 50. Appellant was arrested and charged with one count each of violating 18 Pa.C.S. § 4915.1(a)(1) and (2).

A jury convicted Appellant of both counts. Following imposition of the aforementioned sentence, Appellant filed a post-sentence motion, which was denied. He lodged a timely notice of appeal and complied with the trial court's order to file a concise statement. The trial court authored its responsive opinion, and we now turn to the eight issues raised on appeal.

> I. Whether the evidence was sufficient to convict [Appellant] of count one . . . when the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] was an individual who was required to register with the [PSP] . . . .
>
> II. Whether the evidence was sufficient to convict [Appellant] of count two . . . when the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] knowingly failed to register with the [PSP] . . . .
>
> III. Whether the evidence was sufficient to convict [Appellant] of count one . . . when the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] was an individual required to verify his current address with or to be photographed by the [PSP] by appearing at the [PSP] station as required . . . .
>
> IV. Whether the evidence was sufficient to convict [Appellant] of count two . . . when the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] knowingly failed to verify his current address with or to be photographed by the [PSP] by appearing at the [PSP.]
>
> V. Whether the trial court erred in failing to merge counts one and two for sentencing purposes as both counts have the same elements and arose from a single act[.]

- 3 -

VI. Is it not apparent from the record that trial counsel was ineffective due to failing to object to the hearsay testimony, including double hearsay of unnamed residents, from Trooper Polcha?

VII. Is it not apparent from the record that trial counsel was ineffective due to failing to object to the relevancy of [Appellant]'s registration status in Florida?

VIII. Is it not apparent from the record that trial counsel was ineffective due to failing to object to, or attempt to correct, the inaccurate conclusion of law of Trooper Polcha that [Appellant] was required to register while he was incarcerated?

Appellant's brief at 4-6 (unnecessary capitalization omitted).

Appellant's first four claims collectively challenge the sufficiency of the evidence to support his two convictions. The following well-settled principles apply to our review:

We assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact[-]finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Commonwealth v. Wallace*, 244 A.3d 1261, 1273-74 (Pa.Super. 2021) (cleaned up). "Whether sufficient evidence exists to support the verdict is a

- 4 -

question of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Tejada**, 107 A.3d 788, 722 (Pa.Super. 2015).

Appellant asserts, with respect to each of his two convictions, that the Commonwealth failed to establish that (1) he had to register with the PSP and (2) he knowingly failed to comply with his obligations. We begin with the statutory text of 18 Pa.C.S. § 4915.1(a)(1) and (2):

> **(a) Offense defined.--**An individual who is subject to registration under 42 Pa.C.S. § 9799.13 (relating to applicability) commits an offense if he knowingly fails to:
>
> (1) register with the Pennsylvania State Police as required under 42 Pa.C.S. § 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) or 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police);
>
> (2) verify his address or be photographed as required under 42 Pa.C.S. § 9799.15, 9799.19 or 9799.25 . . . .

18 Pa.C.S. § 4915.1.

Regarding the § 4915.1(a)(1) conviction, the parties agreed that Appellant "is a person required to register under . . . [§] 9799.56, otherwise known as [SORNA]." N.T. Trial, 12/1/22, at 43. During closing argument, Appellant's counsel acknowledged that Appellant was required to register, albeit without reference to a specific statute. *Id*. at 86 ("We heard that [Appellant] is required to register . . . and he admitted that. That's not a question here."). The trial court concluded, and the Commonwealth agrees, that this stipulation was sufficient. **See** Trial Court Opinion, 10/6/23, at 6

- 5 -

("[W]e respectfully . . . find that [Appellant] was required to register under 42 Pa.C.S. § 9799.56[.]").

The concession that Appellant had to register pursuant to 42 Pa.C.S. § 9799.56 is confusing, as that statute is not referenced within § 4915.1(a)(1). Briefly, we observe that § 4915.1 is the enforcement mechanism for Subchapter H of SORNA, whereas § 4915.2 addresses Subchapter I.[5] Notably, § 4915.2 criminalizes failures to "register . . . as required under 42 Pa.C.S. § 9799.56[.]" 18 Pa.C.S. § 4915.2(a)(1). Thus, the parties agreed that Appellant had to "register" pursuant to statute that has no applicability to this case.[6] Nonetheless, we conclude that Appellant is not entitled to discharge for the violation of § 4915.1(a)(1) for two reasons: (1) the stipulation is binding regardless of the error, and (2) Appellant fails to develop any argument establishing that he is entitled to relief.

---

[5] Due to various decisions deeming parts of SORNA unconstitutional, "the General Assembly divided SORNA into two subchapters. Subchapter H is based on the original SORNA statute and is applicable to offenders who committed their offenses after the December 20, 2012 effective date of SORNA; Subchapter I is applicable to offenders . . . who committed their offenses between April 22, 1996 and the effective date of SORNA." *Commonwealth v. Lacombe*, 234 A.3d 602, 607 n.4 (Pa. 2020) (citation omitted). The docket for Appellant's child pornography charges lists an offense date of April 5, 2018.

[6] The criminal information charged Appellant with violating 18 Pa.C.S. § 4915.2. The Commonwealth moved to amend the charges to 18 Pa.C.S. § 4915.1 during trial, which the trial court granted. *See* N.T. Trial, 12/1/22, at 64-65.

Beginning with the first point, in **Commonwealth v. Padilla**, 80 A.3d 1272 (Pa. 2013), a capital case, the defendant stipulated that he committed the killing while in the perpetration of a felony. The stipulation was legally incorrect as the crime at issue was only a misdemeanor. Our Supreme Court held that the stipulation was nonetheless binding for purposes of sufficiency review. "[R]egardless of whether the stipulation was legally correct, we consider **only** if the stipulation . . . constituted sufficient support for the jury's finding[.]" **Id**. at 272 (emphasis in original). Accordingly, despite the confusing nature of this stipulation, the jury was entitled, if not required, to accept what the court and parties told them is true.[7]

We now address whether the stipulation is conclusive, mindful that the **Padilla** Court cautioned that a stipulation must still constitute sufficient support for the jury's finding. We observe that sufficient proof to support a § 9799.15(a)(1) conviction is met if the Commonwealth establishes that the individual failed to: initially register; periodically appear for a photograph and disclosure of information such as phone numbers, Internet identifiers, and employment status; or register for the applicable number of years. The trial court instructed the jury on this charge as follows: "The Commonwealth

---

[7] This case underscores the importance of considering each word of a stipulation. The SORNA framework involves "registration" as an initial matter, *i.e.* the initial registration with the PSP, and a failure to "register" as a substantive offense. A stipulation intended to convey only that Appellant was lawfully required to register with the PSP could have used the precise language of § 4915.1, "subject to registration." Instead, the parties agreed to a stipulation that Appellant was required to "register."

specifically alleges that [SORNA] requires [Appellant] to do the following: Register . . . as required under . . . [§] 9799.56 and, second, [Appellant] knowingly failed to do so." N.T. Trial, 12/1/22, at 105.

This instruction does not squarely match any portion of § 4915.1(a)(1), and the statute does not criminalize a failure to comply with § 9799.56. However, the fact remains that Appellant must convince this Court that he is entitled to relief, and his argument does not discuss any of the foregoing points. "It is, of course, an appellant's burden to persuade us the trial court erred and relief is due." *Commonwealth v. Claffey*, 80 A.3d 780, 787 (Pa.Super. 2013). We have uncovered the discrepancy only by examining the statutory text and the stipulation. We cannot ignore that Appellant, in addition to agreeing to an incorrect stipulation, did not object to the jury instructions. Nor has he developed any argument concerning whether the verdict is invalid notwithstanding the error.[8] By conceding that he had to "register," the Commonwealth presented sufficient evidence that he did not register as required by § 4915.1(a)(1).[9] We therefore conclude that Appellant has failed

---

[8] Relatedly, we do not have the benefit of the Commonwealth's advocacy on this issue.

[9] It is questionable that a developed claim on these points could succeed on direct appeal. Appellant's stipulation is legally incorrect, and as our High Court stated in *Commonwealth v. Padilla*, 80 A.3d 1238, 1272 (Pa. 2013), "a challenge to the sufficiency of the evidence cannot be employed as an alternative route to obtain review of trial court or counsel error."

to meet his burden due to the stipulation and concomitant failure to develop any claim on appeal addressing the effect of said stipulation.

Finally, with respect to the § 4915.1(a)(1) conviction, Appellant stresses in his brief that the following statutory tolling provision applies: "The period of registration . . . shall be tolled for the period of time in which the individual specified in [§] 9799.13 is . . . incarcerated in a Federal, State or county correctional institution, excluding a community contract facility or community corrections center[.]" 42 Pa.C.S. § 9799.15(c)(1)(ii). Appellant does not discuss the significance of this tolling provision beyond the following presentation:

> The tolling of the registration period is important due to the following exchange between the Commonwealth and Trooper Polcha:
>
> Commonwealth: What was the date that you received that [Appellant] moved from [the local jail]?
>
> Trooper Polcha: December 28, 2021.
>
> Commonwealth: Is that time period greater than a year from when he last updated his address in October of 2020?
>
> Trooper Polcha: Yes.
>
> Commonwealth: Would [Appellant] have been required to report annually during that time period?
>
> Trooper Polcha: Yes.

Appellant's brief at 7-8 (quoting N.T. Trial, 12/1/22, at 52).

The tolling provision by its text simply means that the period of registration is tolled during incarceration, *e.g.*, if an offender must register for

ten years any time spent incarcerated does not count towards that time Appellant does not explain how this statute applies here.

Turning to the conviction for § 4915.1(a)(2), the Commonwealth's evidence plainly suffices. That subsection criminalizes a registrant's failure to "verify his address . . . as required" by law, which, in this case, is within seventy-two hours. The evidence established that Appellant never informed the PSP that he moved to Florida, and Appellant freely admitted the same.

We now turn to the second attack on each conviction, wherein Appellant asserts that the Commonwealth did not establish the requisite *mens rea* of "knowingly." At trial, Appellant testified that he misunderstood the nature of his obligations. He relayed to the jury the following version of events. When ICE placed him in Florida in March of 2019, he registered with Florida's equivalent of the PSP. Florida authorities told Appellant that he had to register in that jurisdiction every six months. When he was ordered to return to Pennsylvania in October of 2020 for violating the conditions of his release in this Commonwealth, he remained incarcerated in this jurisdiction until December 28, 2021. During that time, nobody spoke to him about his Pennsylvania obligations and Appellant believed that he was only required to register in Florida. N.T. Trial, 12/1/22, at 71 ("Q. Okay. And as far [as] you were concerned at that point[,] where were you registered for your [SORNA] purposes? A. Down in Florida."). Shortly after his release on December 28, 2021, he returned to the same Florida residence he had previously registered

in that jurisdiction. That Appellant offered a mistake of law defense is demonstrated by the following exchange:

Q. Again, did you think you were in compliance with Florida law?

A. Yes.

Q. And Pennsylvania law?

A. Yes.

Q. Okay. I guess let me ask you this. Were you aware that Pennsylvania law was applying to you while you were living in Florida?

A. No. Because I thought, like, since I registered in Florida which was fine, like, that I didn't have to come back up to register with Pennsylvania again.

*Id*. at 74.

Appellant does not specifically discuss the mistake-of-law issue on appeal, but his brief alludes to this concept. Specifically, he contends as follows:

The Commonwealth failed to prove beyond a reasonable doubt that [Appellant] knowingly, *i.e.* voluntarily, failed to register when he was registered in Florida, involuntarily returned to Pennsylvania and was registered at the Franklin County Jail, did not have to register while incarcerated, returned to Florida and updated his address on his driver's license and then was arrested while verifying his Florida registration.

Appellant's brief at 12.

Appellant's claim that he failed to "voluntarily" register in this context reads as an assertion that the Commonwealth must prove that he specifically intended to shirk his SORNA obligations. In addition to the fact that this argument views the evidence through inferences most favorable to Appellant

- 11 -

instead of focusing on inferences drawn in favor of the Commonwealth as verdict winner, the legal theory is in tension with our precedents. In *Commonwealth v. Roberts*, 293 A.3d 1221 (Pa.Super. 2023), *appeal granted*, 304 A.3d 329 (Pa. 2023), a panel of this Court examined Roberts's claim that he subjectively believed that he was required to register only for ten years. We pointed out that pursuant to § 4915.2, "a SORNA registrant violates by knowing that he failed to report, regardless of his subjective view of the duration of the underlying reporting obligation[.]" *Id*. at 1222. The *Roberts* Court applied the General Assembly's definition of "knowingly" within 18 Pa.C.S. § 302 and held that "a registrant must be aware that it is practically certain he will fail to report and to verify with the [PSP] if he fails to do so." *Id*. at 1225. The Court noted that in most cases a failure to register "will be knowing, because a rational actor knows when he fails to do something. The only exceptions would be in cases where a registrant has dementia, is in a coma, or suffers from a similar mental incapacity." *Id*. at 1225. The *Roberts* Court interpreted § 4915.2 to "codif[y] the ancient maxim that 'ignorance of the law is no excuse.'" *Id*. at 1226 (citation omitted). While the case was not interpreting the statute at issue here, the two statutes are functionally identical.[10] Appellant offers no argument that the analysis should be any

---

[10] *Compare* 18 Pa.C.S. § 4915.1 ("An individual who is subject to registration under 42 Pa.C.S. § 9799.13 (relating to applicability) commits an offense if he knowingly fails to . . . .") *with* 18 Pa.C.S. § 4915.2(a) ("An individual who is subject to registration under 42 Pa.C.S. § 9799.55(a), (a.1) or (b) (relating to registration) . . . commits an offense if the individual knowingly fails to . . . .").

different for purposes of § 4915.1. Accordingly, we follow *Roberts* on this issue. Appellant's subjective belief that he was not required to comply with Pennsylvania law is irrelevant, and the Commonwealth's evidence establishes that Appellant knew of his obligations as he signed paperwork informing him of those responsibilities. The Commonwealth's evidence readily establishes that he knew he failed to report as contemplated by *Roberts*. This challenge therefore fails.

Appellant's fifth claim posits that his convictions merge for sentencing purposes as both involve the same harm to the Commonwealth, to wit, each statutory subsection broadly addresses an offender's failure to keep the PSP apprised of his current status. "Appellant is unable to locate case law on the specific crimes above, however finds support [*sic*] in other contexts such multiple [*sic*] violations of Driving Under the Influence ['DUI')] arising from a single act." Appellant's brief at 14. Appellant's substantive argument then quotes, with no further development, a portion of *Commonwealth v. Given*, 244 A.3d 508, 509 (Pa.Super. 2020). Therein, we held that sentences for violations of 75 Pa.C.S. § 3802(d)(1)(i) and (iii) merged where the conviction was based on the presence of a drug's active compound and its metabolite in Given's blood. We reasoned that § 3802(d)(1) "proscribes a single harm to the Commonwealth . . . . Subsections 3802(d)(1)(i) and (iii) provide alternate means by which the Commonwealth can establish the offense, but do not provide proof of different offenses." *Id*. at 512.

We decline Appellant's invitation to simply adopt ***Given***'s reasoning wholesale. Appellant does not develop why § 4915.1 is comparable to the DUI statute explored in ***Given***, which is reason enough to reject his claim. However, Appellant's argument suffers from an additional flaw, as it does not acknowledge 42 Pa.C.S. § 9765, which states: "No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." Our Supreme Court has held that "a plain reading of [§] 9765 reveals the General Assembly's intent that crimes with different statutory elements be punished separately." ***Commonwealth v. Edwards***, 256 A.3d 1130, 1137 (Pa. 2021) (quoting ***Commonwealth v. Baldwin***, 985 A.2d 830, 831 (Pa. 2009)). To be fair, the ***Given*** Court likewise did not discuss § 9765, instead applying the "same harm" test in lieu of the statute. However, we decline to extend ***Given*** given its questionable departure from § 9765. ***See Given***, 244 A.3d at 514 (Bowes, J., dissenting) ("I am greatly concerned that the . . . holding will encourage the disparate application of § 9765 by creating one merger doctrine that applies to Pennsylvania's DUI statute, and a separate merger doctrine for all other criminal statutes."). Appellant's challenge fails.[11]

---

[11] Appellant makes a fleeting assertion that the elements of one of the offenses is included in the other, but this is plainly incorrect. Subsection (a)(1) as charged requires proof by the Commonwealth that Appellant failed to "register" whereas (a)(2) involves the specific requirement that he failed to report an address change within the applicable timeframe.

Appellant's remaining three claims all assail trial counsel's stewardship, arguing that the trial court erred by not reviewing the claims pursuant to *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013). He first argues that counsel ineffectively failed to raise the tolling provision previously discussed. Second, Appellant asserts that counsel should have objected to testimony regarding Appellant's registration status in Florida. The third complaint is that counsel did not object to testimony from Trooper Polcha in which she related hearsay from a Florida detective which contained statements from people who lived at Appellant's Florida address.

The *Holmes* Court recognized two exceptions to the general rule that collateral claims must be deferred to the PCRA stage. One of these exceptions is not applicable as it requires, in addition to good cause shown, an express waiver of PCRA proceedings. Appellant asserts that the remaining exception applies, which permits review of ineffectiveness claims in "extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice[.]" *Id*. at 563.

In *Commonwealth v. James*, 297 A.3d 755 (Pa.Super. 2023), we interpreted the "meritorious and apparent from the record" standard to require proof that counsel's ineffectiveness was "so blatant and so shocking to the judicial conscience that there is no need for a hearing and the court is compelled to grant relief." *Id*. at 761. That standard has not been met here. The trial court opined that Appellant's "claims are **not** apparent, as this [c]ourt

remains unaware of [counsel]'s legal strategy and reasons for failing to object." Trial Court Opinion, 10/6/23, at 12. We agree. Indeed, two of Appellant's claims assert that his activities in Florida were irrelevant. Appellant's trial strategy, however, was centered on a mistake of law defense based on his compliance with Florida's sexual offender laws. As to the claim regarding tolling, we reiterate that Appellant does not explain why or how the tolling provision is relevant to this case.

In *Commonwealth v. Burno*, 94 A.3d 956 (Pa. 2014), our Supreme Court noted that "it is within the purview of the trial court's discretion to determine whether review at the post-verdict stage of the ineffectiveness claims is appropriate." *Id*. at 971. We discern no abuse of discretion in the trial court's ruling, and Appellant makes no attempt to develop why his claims are so obviously meritorious that the trial court erred in deferring them to collateral review. We therefore reject these three claims without prejudice to Appellant's ability to raise them and any others in collateral proceedings.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/30/2024